IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| METRIC CONSTRUCTION CO.,<br><br>    Plaintiff,<br><br><br>  vs.<br><br><br>ST. PAUL FIRE & MARINE INSURANCE<br>CO., et al.,<br><br>    Defendants. | ORDER & MEMORANDUM DECISION<br><br><br><br><br>Case No. 1:03CV37 |

  This lawsuit arises from a roof failure on a building located at Hill Air Force Base constructed by  Plaintiff Metric Construction ("Metric").  Metric seeks a determination that costs incurred in the repair of the roof are covered under an insurance policy issued by Defendant St. Paul Fire and Marine Insurance Co. ("St. Paul") and seeks damages in the amount of those costs. St. Paul seeks a determination that the damages are not covered by the policy.  The case is properly before the court based upon diversity jurisdiction.  28 U.S.C. § 1332.

  This matter is before the court on the parties' cross-motions for summary judgment.


**Undisputed Facts**

  On March 31, 1999, Metric entered into a contract with the Army Corps of Engineers ("the Corps") to construct the Deployable Medical Systems Warehouse facility ("DepMeds") at Hill Air Force Base.  St. Paul issued an insurance policy to Metric with a policy period of

September 1, 2000 until September 1, 2001 ("Policy").

Metric did not perform any of the work on the DepMeds facility itself.  The roof was installed by two subcontractors: Professional Raingutters and Omega Metals.  The roof installed was a Structural Standing Seam Metal Roof ("SSSMR System") manufactured by Metal Building Components, Inc. ("MBCI").  The SSSMR System consists of a series of metal panels that are attached to clips affixed to the underlying structural steel of the building.  The metal panels are then bound together by a seaming machine.[1]  Early in the installation of this SSSMR System, Metric and Professional Raingutters noted that the underlying steel structure of the DepMeds facility was not level.

On March 23, 2001, a representative of MCBI inspected the roof and concluded that there were several problems with the roof's installation and, accordingly, would not issue a weather-tightness warranty.  On April 12, 2001, the Army Corps of Engineers notified Metric that they had discovered forty-nine leaks in the DepMeds facility's roof and that the "[SSSMR] is not complete, daylight can be seen from inside in numerous locations, flashings are not complete and the roof continues to leak."  (April 12, 2001 Letter from Tim Willard to Metric Construction, attached as Ex. H to Def. Mem. Supp. Mot. Summ. J.).  At Metric's request, D.K. Unrue examined the roof and suggested that it should be replaced rather than repaired.  (Expert Witness Report of D.K. Unrue, attached as Ex. I to Def. Mem. Supp. Mot. Summ. J.).

The Corps asked Metric to remove and replace the roof.  Later, the Corps agreed to the installation of a new roof skin over the defective roof.  This repair was completed in 2002.

Metric has claimed that it paid $228,487.43 for temporary repairs of leaks and damaged

---

[1] The parties' briefs explore the installation process, structure, and defects of the roof in great detail and the court addresses those details only as necessary to explain this Order.

property below the roof and $1,716,693.36 for roof repair work.  In addition to these totals Metric seeks to recover its general and administrative costs and ten percent profit.

## Analysis

Metric seeks to recover the expenses incurred in repairing the roof.  St. Paul has argued that the property damages was not the result of an "event" as required by the Policy and, to the extent that the damage is covered, the exclusions in the Policy relieve St. Paul's of any responsibility.

### Summary Judgment

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c);  see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

### The Policy

In Utah, insurance policies are generally viewed as a contracts and the policy language is "construed according to its usual and ordinary meaning."  Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272, 1274 (Utah 1993).  Here, the plain language of the Policy under which Metric seeks to recover provides:

> **Bodily injury and property damage liability**
> We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage or premises damage that:
> •	happens while this agreement is in effect; and

- <u>is caused by an event</u>.

(Insurance Policy, attached as Ex. K. to Def. Mem. Supp. Mot. Summ. J. ("Policy"), at 12 (emphasis added)).

"[T]he plaintiff has the burden of proving that [its] loss comes within the coverage stated in the policy." <u>Morris v. Farmers Home Mutual Ins. Co.</u>, 500 P.2d 505, 507 (Utah 1972).  It is undisputed that Metric is a protected person under the Policy and that it seeks to recover for property damage.  Based upon the plain language of the Policy Metric must demonstrate that the property damage was the result of an "event" as defined by the contract.  If Metric succeeds in establishing coverage, the burden then shifts to the insurer to raise any exclusions as a defense. <u>Home Sav. & Loan v. Aetna Cas. & Sur. Co.</u>, 817 P.2d 341, 371 n. 7 (Utah App. 1991) (citing <u>LDS Hosp. v. Capitol Life Insur. Co.</u>, 765 P.2d 857, 859 (Utah 1988)); <u>see also</u> <u>Draughon v. CUNA Mut. Ins. Soc.</u>, 771 P.2d 1105, 1110 (Utah App. 1989).

### "Event"

In order to recover under the Policy, Metric  must demonstrate that the property damage was caused by an "event."   The Policy defines an "event" as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Policy at 12).  St. Paul asserts that the property damage at issue  is not the result of an "accident" within the meaning of the Policy and is therefore outside of coverage.

The definition of "accident" has been extensively explored in Utah courts and courts applying Utah law.  In <u>Hoffman v. Life Insur. Co. of N. Amer.</u>, 669 P.2d 410 (Utah 1983), the Utah Supreme Court wrote that the word "accident":

> <u>is descriptive of means which produce effects which are not their natural and probable consequences</u> . . . . An effect which is the natural and probable consequences of an act or course of action is not an accident, nor is it produced by accidental means.  It is either the result of actual design, or it falls under the

4

> maxim that every man must be held to intend the natural and probable
> consequences of his deeds.

Id. at 415 (quoting Richards v. Standard Accident Ins. Co., 200 P. 1017, 1023 ( Utah

1921))(emphasis in original). See also State Farm Fire & Cas. Co. v. Geary, 869 P.2d 952, 955

(Utah App. 1994); Fire Ins. Exch. v. Rosenberg, 930 P.2d 1202 (Utah App. 1997).

    In H.E. Davis & Sons v. N. Pac. Ins. Co., 248 F. Supp.2d 1079 (D.Utah 2002), the

insured sought coverage for expenses incurred in the re-performance of inadequate soil

compaction at a construction site.  The policy in H.E. Davis, defined "occurrence" with nearly

the same language that defines "event" here.[2]  The H.E. Davis court found that the insured had

"intended to perform adequately but apparently did so negligently" and held that the

consequences of the inadequate performance were natural and foreseeable, and therefore could

not constitute an "accident" for the purpose of coverage.[3]  Id. at 1084 (emphasis in original).

The court wrote: "So long as the consequences of plaintiff's work were natural, expected, or

intended, they cannot be considered an 'accident'.  If there is no 'accident', there is no

'occurrence' to trigger coverage under the policy."  Id.

    As primary contractor for the DepMeds facility, Metric was responsible for the entire

property.  It is clear that Metric was aware of the potential problem that existed with the

underlying steel structure.  Metric proceeded with installation of the roof despite indications that

it would not be weather tight and did nothing to rectify the problem immediately after MBCI

---

[2]The policy in H.E. Davis defined "occurrence" as: " an accident, including continuous or
repeated exposure to substantially the same general harmful conditions."  H.E. Davis, 248 F.
Supp.2d at 1083.

[3]The court did not determine that the insured was solely responsible for the inadequate
soil compaction and wrote: "Although it must be presumed that [insured] had some responsibility
for this problem, the central reason for the inadequate compaction appears to be the mistake of
the soils engineer in specifying the method and/or standards for the compaction."  H.E. Davis,
248 F. Supp.2d at 1081.

indicated that it would not issue a weather-tightness warranty of the roof.  Despite its intent to perform satisfactorily, it appears that Metric performed inadequately and the resulting property damage was a natural and foreseeable consequence of its intended performance.  There was no "event" as it is defined in the Policy.

### Exclusions

St. Paul has asserted that, even if Metric can establish coverage under the Policy, the "your work" exclusion in the Policy precludes Metric from recovering here.  St. Pauls point to the following policy language:

> "**Control of Property.** We won't cover property damage to the following property:
> . . .
> •      That particular part of real property being worked on by you or for you if such property damage results from your work."

(Policy at 25 ).  Further, the policy defines "your work" to include "any work that you're performing or others are performing for you."  (Policy at 20).  The language of the policy is unambiguous and the court, therefore, construes it according to its plain and ordinary meaning.  First Am. Title Ins. Co. v. J.B. Ranch, Inc., 966 P.2d 834, 836 (Utah 1998); see also Miller v. U.S.A.A. Cas. Ins. Co., 44 P.3d 663, 676 (Utah 2002).

Metric has asserted that the damage to the DepMeds facility was the result of problems with the underlying structural steel and insulation below the roof which prevented proper expansion and contraction of the roof panels and therefore was not a result of Metric's work.  The court disagrees.  The installation of the insulation and underlying steel structure on the DepMeds facility were performed by subcontractors working on behalf of Metric.  The work of Metric's subcontractors is clearly considered "[Metric's] work" under the plain language of the Policy as work performed for Metric as general contractor.  Therefore, it appears that Metric admits that the repairs to the DepMeds facility fall within the exclusion quoted above.

6

Metric also asserts that St. Paul must demonstrate that the work performed was faulty before this exclusion becomes applicable.  The court disagrees.  The plain language of the exclusion is unambiguous and does not require such a showing.  In <u>Valley Bank & Trust v. U.S. Life Title Ins. Co. of Dallas</u>, 776 P.2d 933 (Utah App. 1989), the Utah Court of Appeals addressed a similar argument.  In <u>Valley Bank</u>, the plaintiff brought suit against a title insurer arguing that an exclusion required the insurer to prove fraud or intent in order to deny coverage. The court wrote:

> We decline to rewrite or read into Valley Bank's policy of title insurance that the insurer must establish the insured was guilty of fraud or misconduct before invoking the protections of the exclusionary clause.  Moreover, had the parties intended such a restriction, they could have easily provided for the same through the terms of the policy itself.

<u>Id.</u> at 937 (citing <u>Zions First Nat'l Bank, N.A. v. National American Title Ins. Co.</u>, 749 P.2d 651, 654 (Utah 1988) ("if something broader . . .  was intended by [the] language, certainly the drafter . . . could have included appropriate language.")).    Here, the exclusion clearly does not require a showing of faulty workmanship and the court declines to import such a requirement.

## ORDER

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.


SO ORDERED this 31st day of August, 2005.

BY THE COURT:

TENA CAMPBELL
United States District Judge